Lamberton vs. Pereles and another.

LAMBERTON, Respondent, vs. PERELES and another, imp., Trustees, Appellants.

*March 21 — April 10, 1894.*

(1) *Circuit courts: Jurisdiction of testamentary trusts.* (2) *Assignment of right to income of personal property held in trust: Married women.*

1. Although under sec. 2443, R. S., the jurisdiction of the county court extends to "cases of trusts created by will admitted to probate in such court," the circuit court, under the constitution, also has jurisdiction of such trusts, and where the trustees are within its jurisdiction may prevent the diversion or dissipation of the income of the trust fund, or control the direction of its payment.
2. A *cestui que trust*, entitled to receive the income of personal property held in trust, may assign his right thereto if the founder of the trust has not provided otherwise, there being in this state no statutory restraint upon such alienation.
3. The wife of one who is entitled under a will to receive the income of a trust fund may acquire from him his right thereto, especially where she takes it in the line of the bequest, upon an agreement to educate and maintain their infant children.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was commenced August 26, 1893. The complaint alleges, in effect, that December 12, 1884, one William E. Lamberton, the father of this plaintiff, *William*

| 87 | 449 |
|----|-----|
| 88 | 538 |

| 87 | 449 |
|----|-----|
| 99 | 270 |

| 87 | 449 |
|----|-----|
| 104 | 301 |

| 87 | 449 |
|-----|------|
| e115 | ²143 |
| 115 | ²146 |
| e116 | ²179 |
| 61 LRA | 928 |

| 87 | 449 |
|----|------|
| 117 | ¹148 |

*W. Lamberton*, made his last will and testament, wherein and whereby he nominated one Jeremiah Quin as the executor thereof, and did give, devise, and bequeath unto said Quin and his successors all of his real and personal property, in trust, however, to certain uses and purposes therein named, and particularly upon the trust to divide the said personal property into four equal shares, and one of said shares to hold during the lifetime of this plaintiff, and to invest the same, and the income thereof to pay to this plaintiff during his life for his support and maintenance; that it was provided in the will that said trustee therein named, in his discretion, at certain times named, might pay over to this plaintiff certain sums of money out of the principal sum of said one-fourth part of the personal estate so devised, not exceeding in all, however, one half of the one-fourth portion so directed to be held in trust for this plaintiff, and that the remainder of said portion should be held and invested by said trustee, and the income arising therefrom should be paid semi-annually to this plaintiff during his lifetime for his support and maintenance, and on his death the said trustee should hold the said remainder of said portion in trust for the lawful issue of the body of this plaintiff, and the same to invest, and the income thereof to pay to said issue for their support and education during minority, and upon reaching majority to pay to such issue as might then be living the principal sum so directed, and, failing such issue, then to certain other parties; that July 14, 1886, the said William E. Lamberton, being then a resident of Milwaukee, died, leaving said will as his last will and testament; that July 16, 1886, said will was duly presented to the county court for probate; that September 7, 1886, said will was duly admitted to probate; that said Quin duly qualified as such executor, and entered upon the discharge of his duties both as executor and trustee, and took possession of the said personal

property, and divided and invested the same as provided in said will, and continued to hold the same until the time of his resignation, hereinafter mentioned; that October 4, 1887, by the final decree of said county court then entered, the said estate was adjudged and declared to be finally settled; that the said Quin, as executor, was discharged from his duties as such executor, and the said personal estate of said deceased was assigned as provided in and by said will; that October 14, 1887, said Quin tendered his resignation as trustee under said will, and the same was duly accepted by the county court; and the defendants *James M.* and *Thomas J. Pereles* were duly appointed trustees in the matter of said trust, in the place and stead of said Quin, and duly qualified as such and entered upon the execution thereof, and ever since have continued to be and are such trustees, and have possession of said personal property devised and invested as aforesaid, and all the income and increase thereof.

The complaint further alleges that there has been paid to this plaintiff, out of the principal of the one-fourth portion directed to be held in trust as aforesaid, a sum of money which is equal to one half of said portion, and that there is now held in the hands of the defendants, as trustees, the balance of said portion upon the trust set forth, and in which said balance this plaintiff, under said will, has no title or interest, save only to receive the income thereof from said trustees during his life; that the whole of said income is no more than sufficient for the necessary support and maintenance of this plaintiff; that the income of the said trust fund invested and held for this plaintiff, and payable semi-annually as aforesaid, is due and payable on or about the 1st days of May and November in each year; that the same has heretofore and until November 1, 1892, been paid to this plaintiff by said trustees, but that since said last date the said defendants, as such trustees, have neglected

and refused, and still neglect and refuse, to account to this plaintiff for any of such income, and have neglected and refused, and still do neglect and refuse, to pay to this plaintiff any portion of said income; that the principal fund now held by the defendants as such trustees amounts to about the sum of $10,000 and over, and that the net income therefrom, to which this plaintiff is entitled during his lifetime, amounts to about the sum of $600 per annum, after discharging the expenses of the trustees, and that after such discharge said trustees have received, as the income of such funds, divers sums of money, now long since due and payable to this plaintiff, the exact amount of which this plaintiff is unable to state.

It is further alleged that the sole and only ground upon which such trustees refuse to account to this plaintiff for said income, and to pay over the same, is that this plaintiff has assigned, transferred, and parted with the same by an instrument in writing executed by him, and delivered to Gladys L. Lamberton, on or about November 1, 1892, wherein and whereby it is recited that, for sundry considerations thereunto moving, the said *William W. Lamberton* transfers and conveys to his wife, the said Gladys L. Lamberton, both of Los Angeles, California, as her separate property, all the income, interest, and profits derived or to be derived or accruing from the said estate under said will, to which he was or may be entitled under said will, and which has not heretofore become payable and been paid to him, with the right in her to collect and receive all such income, interest, and profits directly from the executor, trustee, or other persons or parties by, from, or through whom the same is or may be payable; that the right and title of the said Gladys L. Lamberton, as above stated, are to continue during her natural life, unless she should outlive said *William W. Lamberton*, in which event the same shall go to the children of said *William W. Lamberton*, as

Lamberton vs. Pereles and another.

provided by said will, always excepting therefrom the farm and real estate, and the rents, issues, and profits thereof; that it is, however, expressly understood and agreed that said Gladys L. Lamberton, so long as she is in the receipt of said income, shall properly care for, educate, and maintain each and both of the children of the said *William W.* and Gladys L. Lamberton, namely, William Wood Lamberton and Ariel Rennie Lamberton; that in the event of the decease of Mrs. Lucy R. Lamberton, the mother of the said *William W. Lamberton*, prior to his own, all income from the funds and property which he is or may be entitled to as resulting therefrom, under the will, shall be and become the separate property of the said Gladys L. Lamberton for and during her natural life, but said last-mentioned funds and property shall be and become the property of the children of the said *William W.* and Gladys L. Lamberton, their heirs and assigns, subject only to the said Gladys L. Lamberton during her life, as aforesaid; that in case, however, either or both of said children shall die before becoming of age, the share or right of such child or children, as the case may be, shall thereupon cease, and be and become the property of the said *William W. Lamberton*, his heirs and assigns, subject to the right of income, as aforesaid, in said Gladys L. Lamberton during her natural life; that said income, funds, and property are hereby transferred and conveyed, respectively, to the said Gladys L. Lamberton and children accordingly with the limitations above set forth; that the above includes the Clark manufacturing stock to the said Gladys L. Lamberton.

The complaint then alleges that the defendant Gladys L. Lamberton claims and asserts that by virtue of said assignment she is now, and ever since the execution of said assignment has been, entitled to the said whole of the income of said trust fund; that the said Gladys L. Lamberton parted with no valuable consideration for such instru-

Lamberton vs. Pereles and another.

ment;. that the stock mentioned was certain stock in which said trust funds were invested, and out of which the afore-. said income was in part derived; that said stock has since been sold and its proceeds otherwise invested by said trustees, as a part of the funds mentioned; that said Gladys L. Lamberton at the time of the execution and delivery of said assignment was, and still is, the lawful wife of this plaintiff; that he has no adequate remedy at law, and prays judgment that said pretended assignment be adjudged and declared to be of no force or effect, and that said trustees may be required to account to this plaintiff for, and pay over to him, the income of said trust fund, and that until the final determination of this action said trustees may be restrained and prohibited from paying any of said income to said Gladys L. Lamberton, or to any other person for her..

To that complaint the trustees, *James M.* and *Thomas J. Pereles*, demurred on the ground that the court had no jurisdiction of the subject matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action against them.   From the order overruling that demurrer, the defendants *James M.* and *Thomas J. Pereles*, as such trustees, appeal.

For the appellants there was a brief by *Nath. Pereles & Sons*, attorneys, and *James G. Flanders*, of counsel, and oral argument by *W. K. Gibson*.   To the point that the circuit court had no jurisdiction, the relief obtainable in the county court being full and adequate, they cited R. S. secs. 2443, 3923, 3845; *Batchelder v. Batchelder*, 20 Wis. 453; *Lannon v. Hackett*, 49 id. 270; *Kugler v. Prien*, 62 id. 250; *Hawley v. Tesch*, 72 id. 300.

For the respondent there was a brief by *Ogden, Hunter & Bottum*, and oral argument by *C. F. Hunter*.   To the point that a trust for the receipt of the income of personalty is analogous to a trust for the receipt of the rents and, profits of land, and is not assignable by the person bene-

ficially interested, they cited Lewin, Trusts, 3, 4, 10, 13, 98–9, 692; *Witham's Case*, 4 Inst. 87; *Johnson's Case*, Popham, 106; Jenk. 244, Case XXX; *Snowdon v. Dales*, 6 Sim. 524; Gray, Restraints of Alienation, secs. 175–277; R. S. secs. 2089, 2083, 3029; R. S. N. Y. 1829, part II, ch. 1, tit. II, secs. 57, 63; Id. part II, ch. 4, tit. IV, secs. 1, 2; Id. part III, ch. 1, tit. II, sec. 38; *Hallett v. Thompson*, 5 Paige, 583; *Gott v. Cook*, 7 id. 521, 524–535; *Kane v. Gott*, 24 Wend. 641, 667; *Hone v. Van Schaick*, 7 Paige, 221, 233; *Clute v. Bool*, 8 id. 83, 85; *DeGraw v. Clason*, 11 id. 136; *Sillick v. Mason*, 2 Barb. Ch. 79; *Craig v. Hone*, 2 Edw. Ch. 554; *Rider v. Mason*, 4 Sandf. Ch. 351; *Roosevelt v. Roosevelt*, 6 Hun, 31, 44; *Scott v. Nevius*, 6 Duer, 672; *Grout v. Van Schoonhoven*, 1 Sandf. Ch. 336; *Arnold v. Gilbert*, 5 Barb. 190, 198; *Cruger v. Cruger*, id. 225, 267; *Vail v. Vail*, 7 id. 226, 239; *Brown v. Harris*, 25 id. 134; *Titus v. Weeks*, 37 id. 136, 148, 149; *Perry v. Foster*, 62 How. Pr. 228; *Graff v. Bonnett*, 31 N. Y. 9, 12, 13; *Campbell v. Foster*, 35 id. 361, 371; *Cutting v. Cutting*, 86 id. 522, 544–546; *Hutton v. Benkard*, 92 id. 295, 305; *Cook v. Lowry*, 95 id. 103, 111; *Dodge v. Williams*, 46 Wis. 70, 95; *Williams v. Thorn*, 70 N. Y. 270; *Arzbacher v. Mayer*, 53 Wis. 380, 391; *Sumner v. Newton*, 64 id. 210–216.

CASSODAY, J. The will in question was admitted to probate by the county court of Milwaukee county. The estate has been fully and finally settled in that court. Nothing remains but for the trustees to execute the trust as directed by the will. The jurisdiction of that court, however, is expressly extended by statute " to all cases of trusts created by will admitted to probate in such court." Sec. 2443. But such jurisdiction of the county court is not made exclusive. It is to be remembered that the circuit courts have original jurisdiction in all matters, civil and criminal, within this state, not excepted in the constitution nor prohibited by

law. Const. art. VII, sec. 8. Such judicial power is vested in such courts, "both as to matters of law and equity." Id. sec. 2. The trustees in charge of the estate were within the jurisdiction of the circuit court for Milwaukee county. The contention that that court did not have jurisdiction to prevent the diversion or dissipation of the income of the trust fund, or control the direction of its payment, is clearly untenable. There is no longer any particular reason in this case why such jurisdisdiction should be confined to the county court. The facts stated are sufficient to justify the circuit court in taking jurisdiction. *Willis v. Fox,* 25 Wis. 646; *Catlin v. Wheeler,* 49 Wis. 507; *Hawley v. Tesch,* 72 Wis. 299. The question presented is peculiarly one of general equitable cognizance. Thus, in *Ewing v. Orr Ewing,* L. R. 9 App. Cas. 40, 41, the testator was domiciled in Scotland, where the will was probated, and afterwards confirmed in England; and it was held that the court of chancery in England had jurisdiction to administer the trusts of the will. The Earl of Selborne, L. C., after declaring, in effect, that courts of equity in England are, and always have been, courts of conscience, operating *in personam,* and accustomed to compel the performance of contracts and trusts as to subjects not within their jurisdiction, and in speaking for the court, said: "A jurisdiction against trustees which is not excluded *ratione legis rei sitæ* as to land, cannot be excluded as to movables because the author of the trust may have a foreign domicile; and for this purpose it makes no difference whether the trust is constituted *inter vivos* or by a will or *mortis causa* deed. Accordingly, it has always been the practice of the English courts of chancery to administer, as against executors and trustees personally subject to its jurisdiction, the whole personal estate of testators or intestates who have died domiciled abroad, by decrees like that now in question." See 1 Perry, Trusts, §§ 70, 71. We must hold that the circuit court had jurisdiction.

The principal controversy is as to whether the written instrument executed by the plaintiff, and delivered to his wife, Gladys L. Lamberton, on or about November 1, 1892, whereby he assigned and transferred to her the income of the trust fund in question, as mentioned, is valid.  The validity of the trust is expressly conceded.  The contention on the part of the plaintiff is, and it is said that the trial court held, that our statutes applicable were borrowed from New York, and that under these statutes, as construed in that state, the assignment is void.  The sections particularly relied upon are 2083, 2089.  One of these declares that: "No person beneficially interested in a trust for the receipt of the *rents and profits of lands*, can assign or in any manner dispose of *such interest;* but the rights and interests of every person for whose benefit a trust for the payment of *a sum in gross* is created, are assignable."  Sec. 2089.  The other declares that: "When a trust is created to receive the *rents and profits of lands*, and no valid direction for accumulation is given, *the surplus of such rents and profits* beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created shall be liable in equity to the claims of the creditors of such person, in the same manner as other personal property which cannot be reached by an execution."  These sections are contained in the chapter of "Uses and Trusts," found under the title "Of Real Property and the Nature and Qualities of Estates Therein."  They were taken almost literally from secs. 57 and 63 of the article on "Uses and Trusts" in New York.  4 R. S. N. Y. (8th ed.) 2438, 2439.  Until the recent amendments the same was true respecting secs. 2037–2039, R. S., relating to "vested and contingent estates," the "suspension of power of alienation," and the "limitation on power of suspending alienation."  4 R. S. N. Y. 2432, secs. 13–15.  These statutes relate expressly to real estate.  They may possibly

become applicable to the rents and profits of the farm mentioned, upon the death of the plaintiff's mother. The assignability of such rents and profits of lands is not involved in this controversy. The controversy here is confined to the assignability of the income arising and to arise out of personal property held in trust as stated.

The New York statutes, unlike ours, in addition to the sections cited, also place an express limit on the power of the suspension of the ownership of personal property longer than two lives in being. 4 R. S. N. Y. 2516, sec. 1. This difference in the statutes of the two states has been repeatedly recognized by this court. *De Wolf v. Lawson,* 61 Wis. 474; *Scott v. West,* 63 Wis. 581, 582; *Webster v. Morris,* 66 Wis. 382. The same distinction has been observed by the supreme court of Minnesota, citing numerous New York cases. *In re Tower's Estate,* 49 Minn. 371. In addition to the statute so limiting the power of the suspension of the ownership of personal property, the New York statutes expressly declare that: "In all other respects limitations of future or contingent interests in personal property shall be subject to the rules prescribed in the first chapter of this act in relation to future estates in lands." 4 R. S. N. Y. 2516, sec. 2. That includes, not only uses and trusts, but the whole field of real property and the nature, qualities, and alienation of estates therein. The section last quoted is followed by others prescribing the manner in which "an accumulation of the interest of money, the produce of stock or other income or profits arising from personal property, may and may not be secured." Id. secs. 3–5.

The question presented has elicited much discussion in New York. In speaking of these statutes in *Graff v. Bonnett,* 31 N. Y. 13, HOGEBOOM, J., said, in behalf of the court, that: "It is undeniable that if this were an interest in a trust for the receipt of the rents and profits of lands

Lamberton vs. Pereles and another.

it would not be assignable; and it has been held in several cases that the statute which provides that limitations of future or contingent interests in personal property shall be subject to the statutory rules prescribed in relation to future estates in land was, in effect, *a legislative application of the same principles and policy to both classes of property*, and that, even if the provisions of the statute were not sufficiently comprehensive absolutely to require, as a peremptory injunction of statute law, their application in all their length and breadth and in the same degree to both classes of property, the argument to be derived from the general similarity of the legislative enactments in regard to both classes of property, from the similar, if not equal, mischiefs to be remedied, and from the general policy of the law, would authorize a court of equity, in the exercise of its acknowledged powers, to apply the same rule of construction to both." The same is expressly sanctioned by Judge WRIGHT, speaking for the whole court, in *Campbell v. Foster*, 35 N. Y. 371, 372. To a similar effect is *Cook v. Lowry*, 95 N. Y. 108. In *Graff v. Bonnett, supra*, DENIO, C. J., dissented, and, after reviewing the prior decisions in that state, said: "Hence, I conclude that there is nothing in our statute law which restrains the alienability of the interest of the beneficiary in a trust to receive and pay over the interest of money or of personal property." 31 N. Y. 19.

Thus it appears that, notwithstanding the statutes of New York so making the statutes respecting real estate also applicable to personal property, yet the highest court of that state very reluctantly reached the conclusions mentioned, and then only by a divided court. In this state we have no statute making the chapter on uses and trusts, or any part of it, applicable to personal property. This distinction was not observed by our late Brother TAYLOR in *Arzbacher v. Mayer*, 53 Wis. 380; and the question here considered was not there involved. It would seem that

the founder of a trust fund may secure the benefits of the same to the object of his bounty by providing that the income thereof shall not be alienable by anticipation, nor subject to be taken for his debts. *Holdship v. Patterson*, 7 Watts, 547; *Rife v. Geyer*, 59 Pa. St. 393; *White v. White*, 30 Vt. 338; *Pope v. Elliott*, 8 B. Mon. 60; *Nichols v. Eaton*, 91 U. S. 716; *Broadway Nat. Bank v. Adams*, 133 Mass. 170. This seems to be more unfavorable to the free assignability of such income than the English cases. *Brandon v. Robinson*, 18 Ves. 429; *Rochford v. Hackman*, 9 Hare, 475; *In re Dugdale (Dugdale v. Dugdale)*, L. R. 38 Ch. Div. 176. These cases make a distinction between a gift void on condition and an absolute gift coupled with a limitation upon the ordinary incidents of the property or income so given. But in the case at bar the founder of the trust has imposed no such condition and made no such restriction. On the contrary, he has left the plaintiff free to receive the entire income during his life. Upon the death of the testator, and the admission of the will to probate, the equitable right to the income in question at once became vested in the plaintiff. *Scott v. West*, 63 Wis. 571–573. The trust in question is an active trust. Until the plaintiff parted with his right to the income, or the same became otherwise divested, he could enforce payment thereof as it became due. " The right to control the disposition of property is fundamental." *Dodson v. Ball*, 60 Pa. St. 495; *Sparhawk v. Cloon*, 125 Mass. 266. Of course, such right may be regulated by law. But, as indicated, there are here no restraints upon such alienation, statutory or otherwise. When, as here, it is established that an interest in, or right to, the income of a trust fund is vested in the *cestui que trust*, the mode in which, or the time when, he is to reap the benefit is immaterial. 1 Perry, Trusts, § 386. The distinguished author there says: " The law does not allow property, whether legal or equitable, to be fettered by restraints

Lamberton vs. Pereles and another.

upon alienation. Therefore, when an equitable interest is once vested in the *cestui que trust*, he may dispose of it, or it may pass to his assignees by operation of law if he becomes a bankrupt." To the same effect, *Sparhawk v. Cloon, supra; Forbes v. Lothrop*, 137 Mass. 525; *Sears v. Choate*, 146 Mass. 395; *Maynard v. Cleaves*, 149 Mass. 307. In speaking of the English cases, GRAY, C. J., in the first of these cases, said: "Where the income of a trust estate is given to any person (other than a married woman) for life, the equitable estate for life is alienable by, and liable in equity to the debts of, the *cestui que trust*, and this quality is so inseparable from the estate that no provision, however express, which does not operate as a *cesser* or limitation of the estate itself, can protect it from his debts."

We must hold that the income arising from the personal property so held in trust was assignable. Under our statutes, we are satisfied that it was competent for the wife to take title or acquire the equitable right to such income from her husband, especially as it is in the line of the bequest in the testator's will, and made upon the agreement of the wife to properly care for, educate, and maintain each and both of the infant children of her and the plaintiff. *Wheeler & W. Mfg. Co. v. Monahan*, 63 Wis. 198; *Gettelmann v. Gitz*, 78 Wis. 439; *State v. Wallace*, 67 Iowa, 77. We must hold that the written instrument in question was a valid assignment of the income of the personal property held in trust, which has accrued or may accrue during the life of the plaintiff.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.