# CASES DETERMINED

# August Term, 1918.

FIRST TRUST COMPANY, Respondent, vs. HOLDEN and others, Appellants, and others, Respondents.

*May 3—September 14, 1918.*

*Actions: Consolidation: Effect: County courts: Jurisdiction: Denying probate of will: Agreement by parties to create a trust: Appointment and discharge of administrator: Validity of trust agreement: Execution by minor heir: Ratification.*

1. An order consolidating two actions merges them into one new action, which is to be entitled and prosecuted as directed by the court, and the original actions are thereby terminated and superseded.

2. Objection to the probate of a proposed will having been duly made in county court on the ground of mental incapacity of the decedent, and the issue thus made having been tried upon the evidence and the admissions of all persons interested that the objection was well founded, the court had jurisdiction to deny probate to the alleged will and to administer the estate as intestate, although said admissions were made pursuant to an agreement made out of court by the interested parties for the creation of a trust as to the property of the decedent, and although, if the will were valid, such trust agreement would be void.

3. An order of the county court in such case appointing as administrator a trust company to which the decedent's property had been conveyed pursuant to said trust agreement, and a subsequent order discharging such company as administrator, made after due examination of its accounts and a finding that, as administrator, it had no property of the estate in its possession, were within the jurisdiction of the court and were valid and effective, even though such orders were made in recognition of the fact that the property had been conveyed to the trust company as trustee and were intended to give sanction to the trust agreement as a proper and valid

disposition of the estate and, for that reason, the court did not decree a distribution of the estate under the law governing intestacy.

4. The sole heir having become the owner of decedent's property at the time of his death, subsequent proceedings in the county court to transfer any possible interest which unborn children of said heir might have had in the estate under the alleged will had no legal efficacy.

5. The fact that the trust agreement above mentioned was executed before the alleged will was denied probate does not affect the validity of the trust evidenced by said agreement or of the trust deed made pursuant thereto, if they are otherwise valid.

6. Although said trust agreement and deed were executed by the sole heir of the decedent, and by her general guardians, while she was still a minor, yet the terms of the trust so created being unobjectionable in law, and the execution of said instruments not having been induced by fraud, and said heir, after attaining her majority and after full investigation of the trust and its administration and with full knowledge of all the facts, having executed an express written ratification of the trust agreement and deed, they are valid and binding upon her.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES WICKHAM, Judge. *Affirmed.*

The judgment appealed from was entered in a consolidated action. The *First Trust Company* commenced an action in circuit court in January, 1915, against *Alice Kane Sanderson Holden* and others for the construction of trust deeds under which it claims to be acting as trustee, instructions for future administration of the trust estate, approval of its actions as trustee, acceptance of its resignation as trustee, and the appointment of another trustee. In February, 1915, *Alice Kane Sanderson Holden,* appellant here, filed a petition in the Milwaukee county court entitled "In the Matter of the Estate of Alonzo L. Kane, Deceased," praying that the proceedings for the administration of the estate of decedent be declared null and void, that certain deeds conveying this estate in trust to the *First Trust Company* and the agreement pursuant to which such conveyance

was made be set aside as void, and that such *Trust Company* be required to make report and account as administrator of the estate of decedent. This petition was denied in county court and appeal was taken by petitioners to the circuit court, and there the circuit court consolidated this appeal with the action of the *Trust Company*. The consolidated action was tried in the circuit court, resulting in the judgment from which this appeal is taken.

*Alice Kane Sanderson Holden* is the grandchild of Alonzo L. Kane, deceased, and is the only child of an only daughter of the decedent. The mother died shortly after the birth of *Alice Kane Sanderson Holden.* Alonzo L.. Kane died at Milwaukee January 29, 1899, leaving an estate valued at $247,000, yielding an income of about $12,000. He disposed of this estate by an instrument purporting to be his last will. *Mrs. Holden* was his sole heir at law. At the time of her grandfather's death, her father, Henry B. Sanderson, and one Frank J. Kipp were her general guardians. Her grandfather Kane and wife desired to have her reside with them and become a member of their family, and secured her father's consent to permit her to live with them upon the understanding that she be treated as their child by them and the promise that at their death they would bestow upon her their property. She lived with her grandparents up to the time of the death of her grandfather in 1899 (he had survived her grandmother), excepting for the time she spent attending school. After her grandfather's death she attended school under her father's direction and lived at his home when not attending school. She married *Charles B. Holden* in August, 1903, having reached her majority in January, 1903.

On February 8, 1899, a petition for the probate of Alonzo L. Kane's will was filed in the Milwaukee county court. Objection to the probate of this was filed on behalf of *Mrs. Holden* by James G. Flanders, her guardian *ad litem,* on the grounds of alleged testamentary incapacity and undue in-

fluence. On April 10, 1899, a hearing was had on the petition and the objection filed and evidence taken bearing on the mental competency of the testator to make the will, but the court did not determine the issue thus presented until June 11, 1901, when it entered an order adjudging that at the time of the instrument propounded as the last will and testament of decedent he was not legally competent to make a will and denying the application for the probate of such instrument and decreeing that the decedent died intestate. It appears that he, at the time of his death, was a resident of Milwaukee county, and that he left real and personal property within the county subject to administration. The court appointed the *Trust Company* administrator. Under the proposed instrument, if accepted as a valid will, *Alice Kane Sanderson* would have been entitled to one fourth of the income of decedent's estate during her life, and upon her death, if she left children surviving her, they would, upon conditions stated, have been entitled to a portion of the income of his estate during their lives. After the expiration of all the life annuities provided for, the income was to go to five named charitable institutions. It appears that in view of the objection to the will alleged as to decedent's mental incapacity and the validity of certain provisions in the will under the rules of law as to perpetuities and the suspension of power of alienation of real estate, all the parties interested in the probate proceedings before the will was denied probate entered into a so-called "trust agreement," which provided that the estate be conveyed in trust to the *Trust Company* and that the agreement was to take effect *inter partes* regardless of what disposition the court should make concerning the will contest. The general guardians of *Mrs. Holden,* then a minor, joined in the agreement, and in the conveyances of property pursuant to such agreement with the approval of the court. The *Trust Company* immediately took possession of the property conveyed and treated it as a trust estate.

When *Mrs. Holden* became of age in January, 1903, she took active steps to inquire into the state of the property held by the *Trust Company* under the conveyance to it as trustee. She communicated with the officers of the *Trust Company* and inspected the documents and the accounts of the company. Shortly after she was married to *Charles B. Holden,* who assisted her in her examination of her affairs. She also employed counsel who made investigation of the transactions which finally culminated in the creation of the trust. Counsel appears to have informed her of the existing state of her property affairs and her rights in respect to affirming or repudiating the trust created by the trust agreement and the conveyance of her grandfather's estate to the *Trust Company* for the purposes therein specified. Upon being thus informed of these matters, she signed, acknowledged, and delivered a so-called ratification agreement in January, 1904, and obtained upon request by her from the *Trust Company* a loan on mortgage security upon her property in the sum of $4,200. The evidentiary facts of record in the trial in circuit court are too voluminous for restatement here; it must suffice to refer to the record in connection with the findings of fact made by the circuit court.

The trial court finds the ultimate facts involved in the transactions above referred to, so far as material to the controversies presented by the parties to this litigation. Such additional facts as are necessary to a full understanding of the issue and the decision thereof will be noticed in the opinion.

Upon the whole record the trial court held:

(1) That it was incumbent upon the county court, in probate proceedings for the probate of the proposed will of Alonzo L. Kane, deceased, to disregard any agreement of the interested parties to set aside and deny probate of his alleged will, and the validity of such purported will was required to be determined without reference to such agreement.

(2) That the county court acted within its jurisdiction in entering the decree denying probate of the instrument propounded as the last will of Alonzo L. Kane, deceased, and that such decree is valid and binding on all parties.

(3) That the conveyance of all the interest in and title to the property of the Kane estate, made by *Mrs. Holden* when she was a minor, in which all the other parties interested in the will contest joined, to the *Trust Company* for the purposes of the trusts therein specified, was subject to disaffirmance by *Mrs. Holden* within a reasonable time after she became twenty-one years of age, and that she did not disaffirm it, but expressly ratified it.

(4) That neither *Mrs. Holden* nor her minor children are entitled to have the trust created by the conveyance of the property of the Kane estate to the *Trust Company* declared to be invalid.

(5) That the *Trust Company* in good faith accepted the conveyance of such property for the purposes of such trust and has endeavored to administer the trust according to its terms, and that it is entitled to the direction of the court for the future conduct of the trust and to have its stewardship passed upon by the court.

For the appellant *Alice Kane Sanderson Holden* there were briefs by *Kronshage, McGovern & Hannan* of Milwaukee, and oral argument by *Timothy J. Hannan* and *Francis E. McGovern*.

For the respondents there were briefs by the following named attorneys, all of Milwaukee: By *Miller, Mack & Fairchild* for the *First Trust Company;* by *Van Dyke, Shaw, Muskat & Van Dyke* for the *Milwaukee Orphans' Asylum;* and by *Curtis & Mock* for the *Wisconsin Humane Society;* and the cause was argued orally by *James B. Blake* and *George P. Miller*.

*F. J. Lenicheck* of Milwaukee, guardian *ad litem,* for *Charles B. Holden, Jr.,* and others, minors.

The following opinion was filed June 19, 1918:

SIEBECKER, J.   The circuit court by order consolidated the action commenced by the *Trust Company* as trustee and the appeal action commenced by *Mrs. Holden* in county court, under sec. 2792, Stats.   This order stands unquestioned.   The effect of such order was to merge the two actions into one, to be entitled and prosecuted as directed by the court.   The old actions were thereby terminated and superseded by the new one.   *Allen v. McRae,* 122 Wis. 246, 100 N. W. 12.   On the face of the record and parts of the pleading it appears that the parties have retained the titles of the original actions and treated them as separate and distinct actions after consolidation.   This misconception may be corrected in making the final record of the case.

The appellant, *Mrs. Holden,* contends that the orders of the county court made in the administration of the Kane estate as an intestate estate are void for want of jurisdiction because the court was erroneously induced to make such orders on the grounds that the so-called "trust agreement" was a valid one *inter partes,* and that this error caused the court to act contrary to the law governing the administration of the estate, and hence its orders in the matter were in excess of its jurisdiction and therefore wholly null and void.   This appellant does not assail the order of the county court denying probate of the instrument propounded as the last will of Alonzo L. Kane, deceased.   The guardian *ad litem* of the minor children does assail this order.   It is necessary, under the circumstances of the issues presented, to ascertain the legal effect of this order rejecting the alleged will of Kane.   The jurisdiction of the court was invoked by a proper proceeding and carried to its conclusion.   The record shows that an issue was presented to the court by the filing of objections to the probate of the will by *Alice Kane Sanderson* through her guardian *ad litem.*   This issue

was tried upon the evidence and the admission of all parties named in the will to the effect that such objection was well founded. The court, acting "on said admission and on the evidence adduced and on all the files, records, and proceedings, . . . ordered, adjudged, and decreed that at the time of the execution of the said instrument propounded as the last will and testament of Alonzo L. Kane, deceased, the said Alonzo L. Kane was not legally competent to make or execute a will, and that said instrument . . . was not and is not a valid will." Under the facts shown, is this order void for want of jurisdiction, or is it erroneous but binding if not reversed or set aside? The ground upon which to test the validity of this order is clearly stated in the recent case of *Cline v. Whitaker,* 144 Wis. 439, 129 N. W. 400:

"In dealing with such a matter as this the distinction between total want of jurisdiction; absolute absence of power, and want of jurisdiction, in the sense the term is commonly used, characterizing judicial action which is so highly erroneous as to be without legal justification, yet not, as has been said, beyond competency to err,—must be kept in mind. The two phases of jurisdiction were discussed at considerable length in *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909, one being termed want of power and the other inexcusable departure from established principles;—a gross misuse of power. The former is a usurpation. The resulting judgment or order is totally void. The latter is mere error. The resulting judgment is valid, till avoided in proceedings to that end."

No party challenges the power of the county court to exercise its jurisdiction for the probate of the Kane will or granting administration of his estate in case of intestacy, and all parties except the guardian *ad litem* concur in the view that the order denying probate of the proposed will is valid. The guardian's position is in effect that this order is void because the county court denied probate to the proposed will upon the evidence adduced and pursuant to admissions of the interested parties that the objections were true, and that

such admissions were made pursuant to an agreement made out of court for the creation of the trust embodied in the "trust agreement," and relies upon the cases of *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326. In making this order the court unquestionably had jurisdiction of the subject matter. The record discloses a proper proceeding and an inquest upon the evidence to determine Kane's mental competency to make the will, and, though the court had before it the admission of the parties as to his mental incapacity and approved the so-called "trust agreement," it does not follow that the order denying probate to the alleged will was not a proper and legitimate exercise of its judicial power, based upon good and sufficient grounds, to deny probate to the proposed will. It is considered that the trial court correctly held that this order and decree denying probate to the proposed will is valid and binding upon all the parties and that the county court had jurisdiction to administer the Kane estate as intestate.

Since the Kane estate is an intestate one, it follows as a legal consequence that *Mrs. Holden,* as the only heir at law of Mr. Kane, was the sole owner thereof, and that title to the real estate became vested in her at the death of her grandfather, and that she had a beneficial interest in his personal property that remained after payment of his debts and expenses of administration. It appears that the part of decedent's personal property that remained after payment of his debts and expenses of administration is in the trustee's hands under the trust agreement and that the trustee is ready and willing to account for the same. It is most vigorously asserted and claimed that all of the county court's orders made in the course of administering the Kane estate as intestate are void because the court's action was based on its approval of the "trust agreement" and the trust deed

made pursuant thereto. This claim is grounded on the contention that the proceedings show that the *Trust Company* as administrator did not in fact take charge of the property as administrator, but held and possessed it as trustee under the trust deed and agreement, thus disregarding and evading the law governing the distribution of intestate estates, and that such a course of action is against the public policy of the state, rendering all the orders of the county court in the course of such administration void for want of power to make them. The record does not show that the *Trust Company* received the property of the Kane estate as trustee pursuant to a decree of the county court. It is manifest from the records that the county court did not undertake to decree a distribution of the estate in the form of the trust evidenced by the trust agreement and trust deed. The most that can be said is that the court recognized the fact that the parties had, pursuant to such trust agreement, put the *Trust Company* in possession of the property as trustee, and that the court therefore did not decree a distribution thereof in conformity to the law for the distribution of intestate estates. The court properly appointed the administrator. In the course of the administration it made due examination of its accounts and found that it had no property in its possession as administrator, and hence discharged it as administrator of the estate. There is no room for dispute but that the court could act judicially as to all these steps and that the subject matter involved was within its jurisdiction. The argument is made that, though these administration proceedings and orders therein appear regular and proper on their face, they were in fact induced by and were intended to give sanction to the trust agreement as a proper and valid disposition of the Kane estate, and that the court in this way attempted to adjudge a distribution of this intestate estate without authority and power in law. This claim, however, does not reach the question of the power of the court to make orders in the administration proceeding. The orders

of the court having been made within the administration proceeding of which it had jurisdiction, it follows that the court had legal competency to make them no matter how grievously it may have erred in law in the exercise of its powers, and that they are effective and bind all parties interested in the estate. The fact that the court did not decree a distribution of the Kane estate as intestate under the law is an error within its jurisdiction and does not render its action void for want of power.

We have shown above that the will was denied probate and that Mr. Kane in fact died intestate. Under these circumstances the right, title, and interest to his property devolved upon *Mrs. Holden* at the time of his death, and vested in her all the rights of an owner subject to his debts and the expenses of administration. From this it results that the proceedings had in county court to transfer any possible interest of the unborn children of *Mrs. Holden* which they might have had under the proposed will of Mr. Kane have no legal efficacy and were for naught, so we need not further consider them. Since Mr. Kane in fact made no will, *Mrs. Holden,* immediately upon his death, was empowered in law to make any legal disposition of the property of the estate, including such a one as is evidenced by the trust agreement and deeds. If Mr. Kane had, in fact, executed a valid will, then this trust agreement for a disposition of his estate would have been void upon the authority of *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice (Cowie v. Strohmeyer),* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326.

*Mrs. Holden,* then a minor, executed the trust agreement and deed, as did her general guardians. The fact that the will had not been denied probate when the negotiations were had for the creation of this trust cannot affect its validity if it is otherwise valid and she was not induced to enter the trust agreement through fraud.

The provisions and terms of the trust created are unobjectionable in law and we perceive nothing therein to make them invalid. We have, then, a trust agreement and deed valid on their face and subject only to be impeached by any fraud perpetrated upon *Mrs. Holden* which induced her to execute them, or, if they are not infected by such a fraud, then their legal efficacy is subject only to her alleged right to disaffirm them when she arrived at her majority. An examination of the records and evidence bearing on the transaction which resulted in the making and executing of the trust agreement and the deed pursuant thereto leads us to the conclusion that the circuit court's holding that they are valid is correct. The evidence indicates that *Mrs. Holden* was fully informed of the legal effect of the agreement and deed and that she comprehended their significance. Her acts immediately upon her attaining majority show plainly that she had theretofore fully understood the purpose and effect of the trust arrangement. It is evident that this disposition of her grandfather's estate was in accord with her wishes, under the facts and circumstances presented to her in connection with the will contest and the settlement of the controversies raised thereby. She must be held bound thereby, upon the condition, however, that she had the right to disaffirm the trust when she arrived at the age of twenty-one years. Upon the question of *Mrs. Holden's* ratification of the trust thus created by her and the other parties thereto the circuit court found as facts:

"(7) That on or about the 14th day of January, 1904, said petitioner, *Alice Kane Sanderson Holden,* who had then become of lawful age, with her husband, *Charles B. Holden,* for a valuable consideration, after consultation with her attorney, without any fraud being practiced upon her, and with full knowledge of all the material facts, made, executed, and delivered to said trustee and to certain other parties interested in said trust, a written instrument ratifying said written instrument of June 11, 1901, said trust deed, and the acts of the guardian in relation thereto."

This ratification, so executed in writing, is duly signed by her and her husband in the presence of witnesses, one of them her attorney, Mr. J. W. Bass, who was then acting for her and had advised and consulted with her in her investigation of the trust and its administration by the *Trust Company*. The evidence discloses that she had become fully informed of the contents of the trust agreement and deed, that she fully understood them, and had detailed knowledge of the trustee's doings and the state of the property embraced in the trust. The evidence is clear and well nigh conclusive in support of the trial court's finding of facts on this issue in the case. We are persuaded that *Mrs. Holden* executed the ratification instrument after she had acquired full knowledge of the purposes and conditions of the trust as created by her during her minority, that she was fully informed before the execution of the ratification instrument of the condition of the property held in trust and of the way it had been administered by the trustee up to that time, and that she was not induced to execute the ratification agreement by any misrepresentation of the actual state of affairs concerning the terms of the trust or of the trustee's administration thereof. It must be held that she is bound by her express ratification of the trust agreement and deed. The effect of such ratification is that the trust created in 1901 and the *Trust Company's* acceptance thereof as trustee is binding on all the parties, and that *Mrs. Holden* and her children have established no ground for the relief demanded in this action.

The points discussed by counsel respecting the question of estoppel and the statutes of limitation need not be considered to reach a final and complete determination of all the issues raised by the pleading, and hence discussion of them is omitted.

The circuit court's direction that the trustee be authorized, until further order of the court, to pay the annuity provided for *Louise Warren* out of the *corpus* of the trust estate, is

not challenged nor argued in the brief of counsel on this appeal. It will therefore not be considered by the court.

*By the Court.*—The judgment appealed from is affirmed; the *First Trust Company* to recover its costs and disbursements in this court from *Alice Kane Sanderson Holden.*

ESCHWEILER, J., dissents.

The appellant *Alice Kane Sanderson Holden* moved for a rehearing.

In support of the motion there was a brief by *McGovern, Hannan & Reiss* of Milwaukee.

In opposition to the motion there was a brief on behalf of the respondent *First Trust Company* by *Miller, Mack & Fairchild* of Milwaukee.

The motion was denied, with $25. costs, on September 14, 1918.